**E-FILED**
**CNMI SUPREME COURT**
E-filed: Nov 03 2025 10:34AM
Clerk Review: Nov 03 2025 10:42AM
Filing ID: 77504673
Case No.: 2024-SCC-0024-CQU
NoraV Borja





IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

### ROSA A. CAMACHO,
*Plaintiff-Appellant*,

v.

### NORTHERN MARIANA ISLANDS SETTLEMENT FUND,
*Defendant-Appellee*,

### Supreme Court No. 2024-SCC-0024-CQU

---

### SLIP OPINION

### Cite as: 2025 MP 10

Decided November 3, 2025

---

JUSTICE PRO TEMPORE ROBERT J. TORRES, JR.
JUSTICE PRO TEMPORE F. PHILIP CARBULLIDO
JUSTICE PRO TEMPORE SABRINA S. MCKENNA

---

UNITED STATES COURT OF APPEALS, NINTH CIRCUIT NO. 23-16074
D.C. No. 1:09-CV-00023
Chief Judge Mary H. Murguia

---

PER CURIAM:

¶ 1     On December 9, 2024, the United States Court of Appeals for the Ninth Circuit certified the following question for resolution by this Court:

> Did section 8334(e) of the Northern Mariana Islands Retirement Fund Act of 1988, 1989 N. Mar. I. Pub. L. 6-17, grant Class II members of the Northern Mariana Islands Retirement Fund, who were already employed by the Commonwealth when the Act took effect, an accrued cost-of-living increase benefit that may not be diminished or impaired under the terms of Article III, section 20(a) of the Commonwealth Constitution?

For the following reasons, we hold that it did not.

## I.     FACTS AND PROCEDURAL HISTORY

¶ 2     Article III, section 20(a) of the Commonwealth Constitution reads: "Membership in an employee retirement system of the Commonwealth shall constitute a contractual relationship. Accrued benefits of this system shall be neither diminished nor impaired."

¶ 3     The Commonwealth established the Retirement Fund in 1980. Rosa A. Camacho entered as a Class II member that year. At the time, the system provided annuities but no cost-of-living allowances ("COLAs").

¶ 4     In 1989, the Legislature amended the Retirement Fund Act to add section 8334(e), stating that members "shall be entitled to a 2 percent cost of living increase." Northern Mariana Islands Retirement Fund Act of 1988, Pub. L. 6-17 § 8334(e). Over the following decades, the COLA provision was repeatedly altered. In 1991, eligibility was redefined. Pub. L. 7-39 § 1. In 1993, increases were tied to the Consumer Price Index. Pub. L. 8-31 § 1. In 2007, they were suspended. Defined Benefit Plan Reform Act of 2007, Pub. L. 17-70 § 4(b) (repealed 2011). And in 2011, mandatory COLAs were repealed and replaced with a discretionary scheme. Pub. L. 17-34 § 2(c).

¶ 5     By 2009, the Retirement Fund was facing insolvency. Retirees filed a class action in federal court, resulting in a 2013 settlement agreement that created the Settlement Fund. The agreement entitled participants to receive 75 percent of their "Full Benefits," defined as those provided by statute as of June 26, 2013, or guaranteed by Article III, section 20(a).

¶ 6     In 2016, Camacho claimed the Settlement Fund had underpaid her by failing to apply COLAs since 2009. The district court denied relief, holding that COLAs were not part of her "Full Benefits" because they were discretionary under the 2013 law and not constitutionally protected when she joined the Retirement Fund in 1980.

¶ 7     Camacho appealed, seeking recovery of unpaid COLAs at a minimum rate of two percent annually. Because no controlling precedent resolves whether COLAs are constitutionally protected "accrued benefits," the Ninth Circuit certified the question to this Court.

## II. JURISDICTION

¶ 8     Under NMI Sup. Ct. R. 13(a), we may decide questions of Commonwealth law certified by federal courts when the question is determinative of the cause and there is no controlling precedent. Both conditions are satisfied here.

## III. DISCUSSION
### A. The Core Promise of Section 20(a)

¶ 9     Article III, section 20(a) establishes two principles: membership in the Retirement Fund is contractual, and accrued benefits may not be diminished or impaired. NMI CONST. art. III, § 20(a). These principles elevate statutory retirement rights above ordinary legislative policy, giving them constitutional protection. Their purpose is to ensure that the benefits fixed at the time of entry into the system are honored. *See Cody v. N. Mar. I. Ret. Fund*, 2011 MP 16 ¶ 33 (holding that employee rights vest when employment begins).

¶ 10     We enforced this protection in *Cody*, where the Legislature reduced disability annuities from two-thirds of salary to one-half. *Id*. ¶ 28. We held that the reduction could not apply to members who had joined under the earlier law, because membership itself vested the two-thirds annuity. *Id*. ¶ 31, 33.  Any retroactive reduction would have impaired an accrued benefit and violated section 20(a). *Id*. ¶ 34.

¶ 11     *Cody* confirms that benefits at the time of entry are constitutionally protected from reduction, ensuring that government employees can rely on the retirement package promised when they began service. *See id.* ¶ 33. *Cody* did not, however, resolve whether benefits enacted after entry receive the same protection. That issue arises here with COLAs, which the Legislature first added in 1989 by amending the Retirement Fund Act to grant a two-percent cost-of-living increase to members' benefits.

¶ 12     Section 8334(e) provides that members "shall be entitled" to a two percent COLA. Northern Mariana Islands Retirement Fund Act of 1988, Pub. L. 6-17. Standing alone, this language suggests a strong promise of entitlement. *See Justus v. State*, 336 P.3d 202, 209 (Colo. 2014) (finding "shall be entitled" constituted explicit words of entitlement). Yet *Justus* ultimately rejected the claim that retirees have a contractual right to perpetual COLAs, emphasizing that repeated legislative changes negate any inference of a vested right. *Id.* at 210–12.

¶ 13     The same conclusion follows from our own legislative history, which shows the Commonwealth repeatedly amending or suspending COLAs between

1989 and 2013. These frequent changes are consistent with policy choices rather than constitutional guarantees. *See Flemming v. Nestor*, 363 U.S. 603, 610–11 (1960) (holding that Social Security benefits are not vested property rights because Congress reserved power to alter, amend, or repeal provisions in light of changing conditions).

¶ 14    The treatment of COLAs as shifting policy aligns with this Court's narrow reading of Section 20(a). *See Taisague v. Inos*, 2014 MP 13 ¶ 14 (holding section 20(a) secures the core pension promise but does not extend to every fiscal or statutory adjustment). Consistent with established canons of interpretation, we give constitutional text its plain meaning and do not add words or requirements the drafters did not include. *In re Adoption & Change of Name of Y.M.F.V.*, 2011 MP 7 ¶ 9. Because section 20(a) does not guarantee supplemental adjustments, it cannot be extended to transform COLAs into constitutional entitlements. The question that remains is whether legislative changes to COLAs constitute a contractual impairment. As the following section explains, they do not.

### B. Applying section 20(a) to COLAs

¶ 15    To determine whether legislative changes to COLAs violate our Constitution's contractual obligations, we apply the federal Contract Clause test adopted in *Tano Group v. Department of Public Works*: (1) whether there is a contract; (2) whether it has been impaired; and (3) whether the impairment was substantial. 2009 MP 18 ¶ 60 (citing *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)).

¶ 16    The first two steps are easily met. Membership in the Retirement Fund creates a contractual relationship, and legislative changes to COLAs altered that relationship. The decisive issue is substantial impairment.

¶ 17    *Tano* makes clear that substantial impairment turns on three considerations: (1) whether the parties objectively relied on the abridged term or whether the abridged term caused the parties to enter the contract; (2) whether the legislative change merely adjusted terms or abolished the contract altogether; and (3) whether the provision was so central to the contract that altering it would defeat the bargain. 2009 MP 18 ¶ 60. Under each factor, COLAs do not qualify as protected benefits.

¶ 18    First, COLAs were not a principal inducement to membership in the Fund. A contract is not substantially impaired if the altered provision was not a principal inducement to the agreement or substantially relied upon by the parties. *Id.* ¶ 61. Members who joined before 1989 could not have been induced by COLAs, since the Fund offered none. Even after enactment, continual revisions showed that COLAs were contingent policy choices, not fixed guarantees. As in *Tano*, where reliance on a shifting statutory cap was unreasonable, retirees here could not reasonably rely on COLAs. *Id.* ¶ 62

¶ 19    Second, the changes to COLAs did not abolish the contractual obligation. *Tano* distinguishes between modifying terms of performance and eliminating the duty itself. *Id.* ¶ 63. The Commonwealth altered, suspended, and eventually repealed COLAs, but the annuity continued to be paid in full. The duty to provide a pension remained intact.

¶ 20    Third, COLAs were never central to the bargain. Substantial impairment occurs only when the altered provision was the primary undertaking of the contract. *Id.* ¶ 65. The Fund's central undertaking, as *Cody* confirmed, was to pay a guaranteed annuity. COLAs were supplemental adjustments. Their repeal left the fundamental exchange of service for pension payments unchanged. *Id.* ¶ 66.

¶ 21    Therefore, under *Tano*, no substantial impairment occurred. Accordingly, no violation of Section 20(a) arises from the alteration of COLAs.

### C. Reinforcing the Limits of section 20(a)

¶ 22    Other courts interpreting nearly identical clauses have drawn the same line between core pension promises and supplemental adjustments. The Supreme Court of Colorado has addressed the issue directly, holding that retirees have no contractual right to a fixed COLA formula and that the legislature may reduce COLAs without violating constitutional protections. *Justus*, 336 P.3d at 212. The court explained that COLAs are changed repeatedly, that the statutes never promised they would last for life, and that without clear legislative intent to create a contract, no vested right could arise. *Id.* at 210.

¶ 23    Alaska employs similar reasoning through its inducement test. A benefit is protected only if it serves as part of the consideration for public service. *Duncan v. Retired Pub. Emps. Alaska, Inc.*, 71 P.3d 882, 887 (Alaska 2003). This reasoning secures benefits included in the package when the employee begins working but leaves later add-ons by the legislature unprotected. COLAs enacted after a member began service therefore fall outside the scope of accrued benefits under Alaska's test.

¶ 24    Hawai`i takes a comparable approach by distinguishing between benefits earned for past service and those tied to future service. Benefits already accrued are constitutionally protected, but the legislature retains authority to adjust benefits that operate prospectively. *Everson v. State*, 228 P.3d 282, 296 (Haw. 2010). Unlike the health benefits contested in *Everson*, COLAs had not accrued at the time Camacho's rights to retirement benefits vested. *Id.* Thus, COLAs fall outside the constitutional guarantee recognized under Hawai'i law.

¶ 25    These decisions reinforce the limits built into section 20(a). Our Constitution secures the core pension promised at entry, but it does not lock every later adjustment into place. That line preserves both employee security and legislative flexibility while avoiding the broader fiscal risk to the Commonwealth's ability to sustain its retirement system.

## VI. CONCLUSION

¶ 26    For these reasons, we hold that section 8334(e) of the Northern Mariana Islands Retirement Fund Act did not create a constitutionally protected accrued benefit under Article III, section 20(a) for members already employed by the Commonwealth when the Act took effect. We therefore answer the certified question in the negative.

SO ORDERED this 3ʳᵈ day of November, 2025.

/s/
ROBERT J. TORRES, JR.
Justice Pro Tempore

/s/
F. PHILIP CARBULLIDO
Justice Pro Tempore

/s/
SABRINA S. MCKENNA
Justice Pro Tempore

COUNSEL

Jeanne H. Rayphand, for Appellant Camacho

G. Patrick Civille, for Appellee Settlement Fund.

NOTICE

*This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it may be revised or withdrawn. In the event of any discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e-mail Supreme.Court@NMIJudiciary.gov.*